LORRAINE A. MILLEY *vs.* THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA.

Middlesex.    December 15, 1976. — January 24, 1977.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Civil,* Failure to make objection. *Evidence,* Opinion: expert; Hospital record; Hearsay.

A plaintiff in a civil action was precluded from arguing an issue for the first time on appeal. [39]

In an action to collect the proceeds of a life insurance policy issued by the defendant on the life of the plaintiff's husband, where the issue was whether the deceased had made a false representation of a material fact in his application for the insurance by denying that he had ever been treated for alcoholism, there was no error in admitting testimony by the deceased's doctor that the deceased was an alcoholic. [39-40]

Part of a hospital admissions record which constituted a doctor's commentary on a part of the patient's history was admissible in a civil action under G. L. c. 233, § 79. [40-41]

A judge in a civil action did not err in admitting certain hearsay testimony for the sole purpose of impeaching another witness's previous testimony and in refusing to admit it generally. [41-43]

CONTRACT.    Writ in the Fourth District Court of Eastern Middlesex dated May 12, 1971.

Upon removal to the Superior Court, the action was tried before *Morse,* J.

The case was submitted on briefs.

*Joseph M. Cohen* for the plaintiff.

*George A. O'Toole, Jr.,* for the defendant.

HALE, C.J.    The plaintiff has appealed from a judgment entered on March 21, 1975, on a jury verdict for the defendant in an action to collect the proceeds of a life insurance policy issued by the defendant on the life of the plaintiff's husband, William Milley, and of which the plaintiff was the named beneficiary. In filling out the applica-

tion for the insurance the deceased answered in the negative the question, "Have you ever ... been treated for alcoholism?" The principal issue before the jury was whether that answer was a false representation of a material fact so as to justify the defendant's avoidance of the policy under G. L. c. 175, § 186.[1] The judge instructed the jury in accordance with that section. From what we can gather from her brief, the plaintiff attempts to draw our attention to four issues on appeal, each of which is discussed separately below.

1. The plaintiff argues that the question concerning alcoholism called for a statement of opinion, not of fact, and thus that no answer to the question could be considered a misrepresentation of a material fact. But that issue is not properly before us. The plaintiff points to no action of the trial judge to which she made objection which would bring that issue before us on appeal. The proper way to have raised such an issue in the trial court was by a request for a jury instruction, or by an objection to an instruction given. The plaintiff calls our attention to no such request or objection, and the record reveals none. The plaintiff is therefore precluded from arguing that issue for the first time on appeal. *John B. Deary, Inc.* v. *Crane,* 4 Mass. App. Ct. 719, 724 (1976).

2. A Doctor Margiotta, a physician specializing in internal medicine who had been consulted by the deceased on December 12, 1967, and who had thereafter treated the deceased on several occasions, was called to testify at trial. He testified that at the time of his examination he was of the opinion that the deceased was suffering from a disease of the liver caused by an excessive intake of alcohol, and that he had advised the deceased to give up drinking and

---

[1] General Laws c. 175, § 186, provides: "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

to join Alcoholics Anonymous. The doctor, having earlier testified to his definition of alcoholism, was asked whether in his opinion the deceased was an alcoholic. The plaintiff's objection to that question was overruled, and the doctor answered that the deceased "did fit into my definition of alcoholism at the time I saw him in December of 1967." The plaintiff contends that that answer was erroneously admitted over her objection. We fail to see any error, but in any event, the testimony was nothing more than cumulative, as a substantially similar question had been asked and answered without objection moments earlier during the same direct examination.[2] *Ross* v. *Ross,* 329 Mass. 644, 649 (1953). Even had the objection been seasonably made, there would have been no error in allowing the question to be answered. Dr. Margiotta, once qualified as a medical expert, could properly testify as to his medical opinion where the opinion related to a matter in issue. *Commissioner of Corps. & Taxn.* v. *Bullard,* 313 Mass. 72, 92 (1943). Dr. Margiotta had testified that his opinion was based upon his personal experience as a physician dealing with individuals with alcohol-related problems for a period of more than ten years; that the definition he gave of alcoholism was both his personal and a medical definition; and that his opinion that the deceased was an alcoholic was a medical opinion. Such testimony was admissible. *Commonwealth* v. *Russ,* 232 Mass. 58, 73 (1919).

3. The defendant introduced in evidence a hospital admissions record containing the following: "First Winchester Hospital admission of a 40 yr. old alcoholic who enters with jaundice and the 'shakes.' Patient has been an

---

[2] The doctor's testimony as to his definition of alcoholism and whether the deceased was an alcoholic was as follows: "I think that there are probably two definitions [of alcoholism]. One is the reliance on alcohol for maintenance of one's proper emotional balance. This would be the man who perhaps has 2 or 3 martinis in the evening, coming home, he needs that for his own reasons. And the second part of the definition would have to be the injudicious use of alcohol [so] that it interferes with one's intellect or physical capabilities. I think . . . [the deceased] used alcohol injudiciously. Yes. I think he fits into the second definition."

alcoholic for the past 10 years but has 2 married daughters and has been able to support his family and work as an inside salesman. States that he has never missed any work because of the drinking *although this is hard to believe*"[3] (emphasis supplied).

The plaintiff objected to and sought to have deleted the emphasized portion of the above record on the ground that it did not relate to the treatment or medical history of the deceased and thus did not come within the language of G. L. c. 233, § 79[4], which allows medical records to be admitted in evidence "so far as such records relate to the treatment and medical history" of the case. We do not regard the emphasized words to be a commentary by the doctor on the deceased's credibility. Rather, we regard them to be a commentary on a part of the history as well as the doctor's evaluation of the symptoms and the severity of the conditions he observed in his patient.

4. The plaintiff testified at trial about a conversation with Dr. Margiotta, which was said to have taken place after he had examined the deceased. The plaintiff testified that the doctor had informed her, in the presence of her

---

[3] The record continues as follows: "Patient admits to 1 pint a day with many beers. States that he has never had any jaundice, D.T.'s or hepatic decompensation. Has had acne rosacea on his face for many, many yrs. and this is a source of great anxiety for him. Patient apparently drinks because of his anxiety rather than anything else. He admits that he is an alcoholic. For the past 1 week prior to admission he has noted anorexia and vomiting although he has had a great deal of vomiting in the past related to alcoholic intake and indeed had an esophagoscopy and uvulectomy to see if this could cut down on the incidence of his vomiting although it seems clearly related to alcoholic intake and the uvulectomy did not help his vomiting at all. He has noted some yellow eye balls and dark urine in the past week prior to admission. The last drink was 4 days ago according to him."

[4] General Laws c. 233, § 79, as amended through St. 1974, c. 225, provides in part: "Records kept by hospitals, dispensaries or clinics ... shall be admissible ... as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases and the court may, in its discretion, admit copies of such records, if certified by the persons in custody thereof to be true and complete; but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

husband, that her husband was in good health.[5] The doctor
had testified that at the time of his examination he had
suspected that the deceased was suffering from hepatic cir-
rhosis. The testimony of the plaintiff concerning her con-
versation was offered by the plaintiff and admitted by the
judge for the sole purpose of impeaching Dr. Margiotta's
previous testimony. The judge then instructed the jury as
to that limitation. The plaintiff then sought to have the
statement also admitted on the question of the deceased's
"credibility in the signing and answering of questions in the
application . . . as to his intent." Thereupon there was an
unrecorded bench conference and nothing further appears
on the record at that point as to the matter. The transcript
does not indicate that the plaintiff made an objection as
required by Mass.R.Civ.P. 46, 365 Mass. 811 (1974). How-
ever, after both parties had rested, the judge in a state-
ment for the record concerning that testimony said,
"Counsel for the plaintiff asked that it be admitted gen-
erally and I refused to admit it except for a limited pur-
pose." He then noted the plaintiff's objection to that
ruling. At that time the plaintiff made no suggestion to
the judge that the evidence might be admissible for
another non-hearsay purpose.[6] When the judge noted her
objection to his refusal to admit the testimony "generally,"
the plaintiff did not protest the use of that term. If the
plaintiff considered that there was a misunderstanding on
the part of the judge, it would have been a relatively sim-
ple matter for her to have so informed the judge on either
of the two occasions when he had the matter under con-
sideration. We conclude that the request of the plaintiff
was that her testimony be admitted generally. The testi-

---

[5] The testimony of the plaintiff was as follows: "I asked Dr. Mar-
giotta if he would put my husband into the hospital and take some
tests on him to make sure that there was nothing wrong and to find
out why he was vomiting in the morning; and he said it didn't warrant
it, as far as he could see there was nothing wrong with [the decedent]."

[6] Such as to show that the statement was made and was heard by
the decedent and that it had an effect on the decedent's state of mind
at the time he answered the question on the application.

mony being thus offered was hearsay and was properly limited. *Commonwealth* v. *DelValle*, 351 Mass. 489, 491-493 (1966).

*Judgment affirmed.*