WALTHAM TRUCK EQUIPMENT CORP. *vs.* MASSACHUSETTS EQUIPMENT COMPANY.

Middlesex.    April 6, 1979. — May 16, 1979.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Frauds, Statute of. Contract*, Parties. *Practice, Civil,* Charge to jury, Failure to make objection.

In an action for breach of a contract for the purchase and sale of twelve used school buses, three writings signed by a representative of the defendant, including a letter of rejection, were sufficient to satisfy the requirements of the Statute of Frauds. [583-584]

In an action for breach of a contract for the purchase and sale of twelve used school buses, there was sufficient evidence to warrant a finding of a direct contractual relationship between the plaintiff and defendant. [584]

In an action for breach of contract, whether writings were sufficient to satisfy the Statute of Frauds was a question of law to be determined by the judge, and, therefore, the judge did not err in refusing to submit that issue to the jury. [585]

In an action for breach of contract, there was no merit to the defendant's contention that the judge erred in refusing to give a requested instruction where the instruction was given in substance if not in the precise words requested. [585]

CONTRACT. Writ in the Second District Court of Eastern Middlesex dated December 7, 1973.

The action was tried in the Superior Court before *Cratsley*, J., a District Court judge sitting under statutory authority.

*John O. Mirick* for the defendant.

*Donald J. MacRae* for the plaintiff.

HALE, C.J. Waltham Truck Equipment Corp. (Waltham) brought this action for damages arising from Massachusetts Equipment Company's (Equipment) alleged breach of a contract for the purchase and sale of twelve used school buses. The case was tried before a jury, which returned a verdict for Waltham. From the ensuing judgment, Equipment appeals. It argues that a verdict in its favor should have been directed on the basis of the Statute of Frauds or the third-party beneficiary rule of *Mellen* v. *Whipple*, 1 Gray 317, 321 (1854), and that the judge erred in refusing to give certain jury instructions on the above two principles. The jury could have found the following facts.

Waltham owns, operates, and leases school buses. Equipment is a distributor of a certain make of school bus body. In the spring of 1973, Waltham executed an order to General Motors Corporation (GMC), a manufacturer of bus chassis, for the purchase of fifteen new complete school buses, the bodies for which were to be supplied by Equipment. The written order form provided, in addition to the terms of sale of the new buses, that GMC would give Waltham a trade-in allowance of $2,700 for each of twelve used 1969 buses then owned by Waltham. It was noted on the order form that the figure of $2,700 was "per Mr. Lumsden," the representative of Equipment. GMC's representative, one Jorgensen, had confirmed by telephone with Lumsden that Equipment was willing to accept Waltham's used buses as trade-ins. On March 20, Lumsden sent Jorgensen a letter confirming the price quoted on the bus bodies and stating his readiness to accept fifteen used 1969 model buses at $2,700 each. Waltham's representative, one Lopez, telephoned Lumsden when he learned of this letter, and the two orally agreed

that the letter should have referred to twelve 1967 model buses. The transaction between GMC and Waltham was never consummated because GMC could not meet Waltham's required delivery date.

Waltham subsequently ordered twelve buses from International Harvester Co. (International) with bodies to be supplied by Equipment. The written order form, signed by Lopez on behalf of Waltham, and by one Sullivan for International, contained a space for the amount of the trade-in allowance. The space was left blank. Sullivan, while meeting with Lopez to finalize Waltham's order, had called Lumsden, who, having been informed that Lopez was on an extention telephone, stated that he was willing to extend to International the same offer originally made to GMC to accept Waltham's trade-ins for $2,700 each. It was also agreed that the buses to be taken in trade were 1967 models.[1] The used buses were to be delivered directly to Equipment by Waltham, and Equipment was to pay Waltham for the buses. Lumsden inspected the buses a week or two after this conversation, and made no comment about the model year.

On August 28 Lumsden arranged with Waltham to pick up two of the used buses.[2] After taking the two buses, Lumsden mailed a check for $3,400 to Waltham with a letter stating that he would pay only the wholesale price of $1,700 each for the buses because they were 1967 models rather than the 1969 models that their agreement contemplated. The letter enclosed a copy of the quotation letter Equipment had earlier sent to GMC. The letter also stated, "Our allowance of $2700 each was based on the

---

[1] There was a dispute as to whether the price quoted was based on used buses of a 1967 or a 1969 model year. Lumsden testified that his price quotation was for 1969 model buses and that he was not apprised of the fact that the buses were 1967 models until he picked up two of them. The jury apparently chose to disbelieve this testimony.

[2] Not all of the new buses had been delivered to Waltham at that time. Ultimately all were delivered, and no aspect of that transaction is now in issue.

wholesale price of models manufactured in the year 1969." Lopez responded with a letter that disputed Lumsden's characterization of their agreement, asserted that Lumsden's taking of the two buses was part of the trade-in arrangement and requested the difference between the amount paid and the amount agreed on as to trade-ins. Lumsden wrote back to Lopez stating that "we are withdrawing our offer to take any buses in trade." Waltham sold the remaining used buses elsewhere at a price less than $2,700 each, and this action ensued.

1. Equipment argues that the judge erred when he failed to direct a verdict in its favor because any contract between itself and Waltham would be unenforceable as matter of law because not sufficiently embodied in writing to satisfy the Statute of Frauds. General Laws c. 106, § 2-201, inserted by St. 1957, c. 765, § 1, the version of the Statute of Frauds that controls this case, requires that a memorandum memorializing an oral agreement contain three elements to render the contract enforceable: the writing must indicate the existence of the contract, it must be signed by the party to be charged, and it must indicate the quantity of goods involved. See *Oswald* v. *Allen*, 417 F.2d 43, 46 (2d Cir. 1969); *Alice* v. *Robbett Mfg. Co.*, 328 F. Supp. 1377, 1379 (N.D. Ga. 1970), aff'd 445 F.2d 316 (5th Cir. 1971); *Derden* v. *Morris*, 247 So. 2d 838, 839 (Miss. 1971). In this case there were three writings in evidence signed by a representative of Equipment. Reading these papers together (*Schmoll Fils & Co.* v. *Wheeler*, 242 Mass. 464, 470 [1922]; *Bresky* v. *Rosenberg*, 256 Mass. 66, 73 [1926]), we hold that the requirements of the Statute of Frauds were satisfied. A letter of rejection can serve as an acknowledgement of the existence of a contract sufficient to make it enforceable. *George Lawley & Son* v. *Buff*, 230 Mass. 21, 24 (1918). *Bresky* v. *Rosenberg*, 256 Mass. at 72-73. *Sennott* v. *Cobb's Pedigreed Chicks, Inc.*, 324 Mass. 9, 11 (1949). Lumsden's letters following his pickup of two of Waltham's buses recognized the existence of a contract between the parties even though they

indicated a dispute as to one of the terms of that contract (the model year of the buses). A quantity specification was made in the first of these letters when it made reference to "our letter of agreement to take up to fifteen" used buses. Because the writings here were sufficient to satisfy the requirements of G. L. c. 106, § 2-201(1), we need not address the question whether the transfer of possession of two of the buses was a sufficient part performance to take the entire contract out of the Statute of Frauds under G. L. c. 106, § 2-201(3)(c).[3]

2. Equipment further argues that a verdict should have been directed in its favor because there was no evidence of a direct contractual relationship between itself and Waltham. It asserts that Waltham was no more than a third-party beneficiary to a contract between Equipment and International, and hence had no enforceable rights against Equipment under the rule of *Mellen* v. *Whipple*, 1 Gray at 321.[4] This argument fails because there was ample evidence from which the jury could have found that there was a direct contractual relation between Equipment and Waltham. See *Merrill* v. *Kirkland Constr. Co.*, 365 Mass. 110, 114-115 (1974).

---

[3] Prior to the adoption in Massachusetts of the Uniform Commercial Code, the acceptance of a portion of the contract goods (determined as a question of fact) could take the entire contract outside the Statute of Frauds. See, e.g., *Townsend* v. *Hargraves*, 118 Mass. 325, 336-337 (1875). General Laws c. 106, § 2-201(3)(c), now provides that a contract otherwise unenforceable because of insufficient writing is enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted." As it stands, this subsection appears to provide that acceptance of some of the goods takes a contract out of the Statute of Frauds only to the extent of the goods accepted. *Williamson* v. *Martz*, 11 Pa. D. & C.2d 33, 35 (1956). *Texas Truck Sleeper Co.* v. *Artman*, 62 Pa. D. & C.2d 663, 665-666 (1973). See Comment 2 to § 2-201 of the Uniform Commercial Code, 1 U.L.A. (Master ed. 1976).

[4] We need not address the extent to which recent cases (see, e.g., *Falmouth Hosp.* v. *Lopes*, 376 Mass. 580, 582-583 [1978]) have eroded the precedential value of *Mellen* v. *Whipple*.

3. Equipment argues that the judge erred when he refused to instruct the jury that, to find for Waltham, they had to find the existence of a writing signed by Equipment evidencing its agreement as to the used buses. Whether writings (the existence and genuineness of which are undisputed) evidencing a transaction are sufficient to take a contract outside the Statute of Frauds is a question of law to be determined by the judge (*Bresky* v. *Rosenberg,* 256 Mass. at 74), so the judge's refusal to allow the jury to make its own appraisal of the sufficiency of the writings involved here was proper.

4. Finally, Equipment argues that the judge erred in refusing to instruct the jury according to its request no. 4.[5] It did not object to that refusal. Its objection to the judge's instructions in this area was based solely on his refusal to give requested instruction no. 5.[6] Any argument as to error in the refusal to give instruction no. 4 is not properly before us because of the failure to object to the instructions given on that basis. *Kaltsas* v. *Duralite Co.,* 4 Mass. App. Ct. 634, 638-639 (1976). *Milley* v. *Prudential Ins. Co. of America,* 5 Mass. App. Ct. 38, 39 (1977). See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). The judge's instruction adequately outlined the governing contract law and informed the jury that they needed to find the existence of a contract between the parties (*Bresky* v. *Rosenberg,* 256 Mass. at 75) if they were to return a verdict for the plaintiff. Instruction no. 5 was thus given in substance, and there was no error.

*Judgment affirmed.*

---

[5] "4. If you find that Waltham and International entered into an agreement for the sale of new buses and the trade-in of used buses, and if you find that International and Mass. Equipment entered into an agreement for the sale of new bus bodies and the trade-in of used buses, then you must return a verdict for Mass. Equipment. Waltham cannot recover for breach of a contract between Mass. Equipment and International, even if Waltham would have benefited from such a contract."

[6] "5. Waltham may not recover any damages for breach of contract unless you find a direct contractual relationship between Waltham and Mass. Equipment."