ANASTASIA JARRY & another[1] *vs.* LOUIS CORSARO & others.[2]

No. 94-P-878.

Hampden. November 16, 1995. - June 26, 1996.

Present: BROWN, KASS, & LENK, JJ.

*Practice, Civil,* Instructions to jury, Failure to make objection, Objections to jury instructions. *Negligence,* Medical malpractice, Standard of care. *Medical Malpractice,* Standard of care. *Evidence,* Admitted without objection.

In a medical malpractice action plaintiffs did not, by a proper objection before the jury retired, preserve for appeal the issues of the judge's instructions to the jury on the appropriate standard of care applicable to the defendant physicians [603-607] or, by a timely motion to strike, the issue of the admissibility of a certain insert enclosed in a prescription package [607-609].

CIVIL ACTION commenced in the Superior Court Department on May 10, 1989.

The case was tried before *William H. Welch, J.*

*Howard S. Ross* for the plaintiffs.

*Mary J. Kennedy* for M. Lee & another.

*John G. Bagley* for Louis Corsaro.

*Deborah A. Bloom* for Eleanor C. Seiler.

BROWN, J. This appeal arose from a medical malpractice action brought on behalf of a minor, Anastasia Jarry ("Anastasia"), against five physicians: Drs. Louis A. Corsaro, Eleanor C. Seiler, William LaFleur, M. Lee, and J. Kessler. A jury returned verdicts in favor of each of the defendants with the exception of Dr. LaFleur.

On appeal, the plaintiffs ("Jarrys") assert that the trial judge (a) erroneously instructed the jury as to the standard of

---

[1]Charlene Jarry, individually and as next friend of the minor plaintiff.

[2]Eleanor C. Seiler, M. Lee, J. Kessler, and Associates in Pediatrics, Inc. The remaining defendant, William LaFleur, is not a party to this appeal.

care applicable to two of the physicians, Drs. Kessler and Lee, and (b) erred in permitting the introduction in evidence of a product circular concerning the prescription medication Tussionex. After careful review of the record, we find insufficient grounds for disturbing the jury verdicts.

Anastasia was five months old when she developed a pertussis-like syndrome, according to Dr. LaFleur, her pediatrician. On March 1, 1983, desiring a second opinion, her parents took her to Dr. Corsaro, who prescribed Tussionex, a cough suppressant containing a narcotic. Anastasia's mother filled the prescription and administered the drug as prescribed. The next morning Anastasia was taken by her mother for a "follow-up" visit to Dr. Seiler, Dr. Corsaro's associate, who recommended that she continue using Tussionex. Anastasia's mother did not give her any additional doses but took her later in the day to Baystate Medical Center, where Dr. LaFleur, as the attending physician, authorized her admission. Drs. Kessler and Lee were the pediatric residents who attended Anastasia on the pediatric ward. Dr. Kessler, as a second-year resident, ostensibly was the supervisor of Dr. Lee, who was in her first year. On March 3, 1983, through March 5, 1983, mucus was suctioned from Anastasia by machine, but no oxygen was administered. At some point during the hospitalization, Anastasia suffered brain damage from lack of oxygen which resulted in a seizure disorder and mental retardation.

At trial, the plaintiffs alleged a number of theories of medical malpractice. They alleged that Dr. LaFleur was negligent because he failed to attend Anastasia while she was in the hospital and failed to order that oxygen be administered. The jury found him negligent. They alleged that Dr. Corsaro was negligent in prescribing Tussionex, which allegedly should not be used for infants, and in failing to order that oxygen be administered when he took over Anastasia's care in the hospital. The jury found that he was negligent but that his negligence was not the proximate cause of the plaintiffs' injuries. The plaintiffs alleged that Dr. Seiler was negligent in advising that Anastasia be continued on the drug Tussionex. The jury found that Dr. Seiler was not negligent.

As to Drs. Lee and Kessler, the alleged negligence was that they failed to contact Dr. LaFleur and failed to order oxygen or do blood gas studies which would have informed them

that Anastasia was lacking in oxygen. The jury found that they were not negligent.

1. *Jury instructions.*

The plaintiffs allege two errors with respect to the jury instructions. First, the Jarrys argue that the trial judge erred in instructing the jury that Drs. Kessler and Lee were to be held to the standard of care of a general practitioner. They contend that Drs. Kessler and Lee, as second and first-year residents respectively, should have been held to a higher standard of care because they (a) had received additional training in pediatric care, and (b) held themselves out as specialists.[3] See and compare *Aceto* v. *Dougherty*, 415 Mass. 654, 658-659 (1993). Second, they contend that the trial judge erred in omitting their proposed jury instructions.[4]

A party must make a proper objection to a jury instruction before the jury retires in order to preserve the issue for appeal. *Abraham* v. *Woburn*, 383 Mass. 724, 732 (1981). See Mass. R.Civ.P. 51(b), 365 Mass. 816 (1974). "A party who fails to comply with [this] rule . . . forfeits his right to complain on appeal of the giving or omission of an instruction." *Narkin* v. *Springfield*, 5 Mass. App. Ct. 489, 491 (1977). Here, the plaintiffs failed to make a proper objection, and therefore cannot challenge the propriety of the jury instructions on appeal.

At the close of the evidence, counsel for the various parties met with the trial judge to discuss certain posttrial matters,

---

[3]This latter point, i.e., the so-called "holding-out" rationale, may not properly be raised on appeal because the record does not reflect an objection was taken to the judge's omission of such an instruction. See *Abraham* v. *Woburn*, 383 Mass. 724, 732 (1981). Nor did counsel provide the requisite precision and clarity to enable the judge "to understand, let alone correct, the supposed error." *Coupounas* v. *Madden*, 401 Mass. 125, 130 (1987).

[4]We note that this case presents the question of the standard of care required of residents and interns when treating patients. See, e.g., *St. Germain* v. *Pfeifer*, 418 Mass. 511, 518-519 (1994). Although the standards of care for general practitioners and specialists have been clearly established under Massachusetts law, *Brune* v. *Belinkoff*, 354 Mass. 102, 109 (1968) (general practitioner is held to the standard of care and skill of the average qualified practitioner, whereas a specialist is held to the standard of care of the average practitioner of the specialty), neither this court, nor the Supreme Judicial Court, has dealt squarely with the appropriate standard for residents beyond their first year of residency. But see *Grassis* v. *Retik*, 25 Mass. App. Ct. 595, 602 (1988). This case, however, does not provide a proper vehicle for formulating a standard, as the plaintiffs have failed to preserve the issue for appeal.

one of which was the wording of the jury verdict forms. Drs. Kessler and Lee requested that the forms specifically ask whether they, in treating Anastasia, departed from the degree of care and skill ordinarily exercised by a second-year medical resident or intern. The judge asked the plaintiffs what they thought of the proposed wording. The plaintiffs' counsel responded:

> "I think it would be misleading, essentially you have two categories, one for doctors who are average qualified and one for doctors that are specialists, average qualified specialists. This man and woman are doctors, and there is no third category that basically says resident in training. So I think if Mr. Tarpey wants a specific instruction I don't think it's necessary, because it's either the leading qualified physician or specialist. If he wants to have specials [*sic*] for Lee and Kessler this would be misleading with respect to the applicable law. *I think Your Honor's proposed instruction is fine*" (emphasis added).

The judge then stated that he did not think that Drs. Kessler and Lee were specialists, and that therefore they should be held to the standard of care of a regular physician.[5] The plaintiffs did not express disagreement with the judge's statement.

Following discussion of other posttrial matters, the judge entertained the parties' requests for jury instructions. With respect to the standards of care, the Jarrys submitted the following instructions:

> *No. 11.* The defendants here, Doctors Corsaro, Seiler, LaFleur, Lee and Kessler to treat and care for the plaintiff, Anastasia Jarry, each represented that they possessed a specialized skill. The law imposes on them a duty of possessing, and acting in accordance with such skill, care and learning that is ordinarily possessed by

---

[5]The trial judge stated: "I don't think there is any special category as a resident, first or second-year resident, I think it's either as a general physician or a specialist. . . . Dr. Lee and Dr. Kessler are not specialists *so I think they are held to the standard of care of a regular physician.* I think probably it would be better to cover that through the instructions rather than a separate form of wording in the question" (emphasis supplied).

the average qualified specialist or pediatric resident in the field of pediatrics.

*No. 12.* Where a doctor holds himself out to be a specialist, the law holds him to the standard of care and skill of the average member of the medical profession practicing that specialty, taking into account the advances in the profession.

The judge did not discuss the proposed instructions with the parties, but instead summarily informed them of his intended instructions. The judge stated that he would instruct the jury on "general negligence and then the specific negligence that applies to specialists. . . ."[6] Counsel for Drs. Kessler and Lee asked the judge whether the instructions would reflect that two of the physicians, presumably Drs. Kessler and Lee, were not specialists. The judge indicated, implicitly, that they would.[7] Moreover, the judge stated that he would inform the jury of the law applicable to each defendant.

In instructing the jury, the judge stated that there were two standards of care relevant to the case: the general practitioner

---

[6]The trial judge stated that the jury would be instructed that specialists are held to the "standard of the average, reasonably prudent, careful specialists practicing in that field. . . ."

[7]MR. TARPEY:

"Your Honor, the only other thing I wanted to mention was that I'm sure Your Honor has very clearly in mind that we have three specialists and three who are not specialists as far as the instructions."

THE COURT:

"Two who are not."

MR. TARPEY:

"Pardon me, two."

MR. ANTI:

"Judge, you are going to clearly indicate to the jury each separate defendant."

standard and the specialist standard. He instructed the jury that Drs. Kessler and Lee were to be judged by the general practitioner standard.

After the charge, the parties met with the judge at sidebar. The plaintiffs stated that upon further reflection they believed that the instruction as to the standard of care applicable to Drs. Kessler and Lee was misleading. They asserted that because Drs. Kessler and Lee possessed additional training, they should be held to an intermediate standard: that of a general practitioner who is a first or second-year resident. The trial judge responded: "That isn't broken down. Who knows what additional training they had at that point. I think it's either general practitioner or a regular doctor or specialist, one or the other." The plaintiffs did not pursue the matter further.

At the conclusion of the sidebar conference, the judge supplemented his instructions to the jury. With respect to the standards of care, the judge added:

"When I spoke about the defendants' standard of care of a specialist or a general practitioner, you determine that standard, then you determine whether or not the defendants met that standard by applying and using their skill, knowledge and judgment in the treatment of this child."

The judge then asked the parties if there was "anything further." The plaintiffs indicated that they had nothing to add. See and compare *Flood* v. *Southland Corp.*, 416 Mass. 62, 66 (1993).

The Jarrys argue that the trial judge erred in failing to give proposed instruction No. 12.[8] They, however, did not specifically object to its omission. A party must object to the failure to give a specific instruction in order to preserve the issue for appeal. See *Waltham Truck Equip. Co.* v. *Massachusetts Equip. Co.*, 7 Mass. App. Ct. 580, 585 (1979); *Burke* v. *Gallison*, 7 Mass. App. Ct. 918, 919 (1979). Cf. *Simmons* v. *Yurchak*, 28 Mass. App. Ct. 371, 379 & n.10 (1990). Instead, the plaintiffs merely asserted that upon further reflection they

[8]Although the trial judge did not give proposed instruction No. 12, the record indicates that he did instruct the jury with regard to the standard of care applicable to specialists.

believed that Drs. Kessler and Lee should be held to the standard of care of a general practitioner who is a first or second-year resident. This objection, however, was deficient in that it did not sufficiently inform the judge that they were protesting the omission of the proposed instruction.[9] See *Narkin* v. *Springfield*, 5 Mass. App. Ct. at 491. The Jarrys are therefore precluded from challenging the omission of the instruction on appeal.[10]

Nor can the Jarrys attack the validity of the trial judge's instruction with regard to the standard of care applicable to Drs. Kessler and Lee. The trial judge, in apparent response to the Jarrys' objection, further instructed, albeit not fully consistent with his earlier instruction, see note 5, *supra*, that the jury must decide which standard to apply.[11] Following this supplemental instruction, the trial judge asked the parties if they had anything further. The plaintiffs indicated that they had nothing to add. Having acquiesced in the trial judge's supplemental instruction, they cannot now contend that the instructions were inadequate. See *Betty Corp.* v. *Commonwealth*, 354 Mass. 312, 321 (1968).

2. *Evidentiary issue.*

The Jarrys further argue that the trial judge erred in permitting the introduction in evidence of a product circular package insert concerning Tussionex.[12] Specifically, they contend that the circular should have been excluded because

---

[9]Furthermore, the standard of care for which the plaintiffs advocated at sidebar differs substantively from that contained in proposed instruction No. 12. Pursuant to instruction No. 12, Drs. Kessler and Lee would have been held to the specialist standard. In their objection, however, the Jarrys asserted that Drs. Kessler and Lee should be held to an intermediate standard. Their objection, therefore, was fatally flawed. See *Lysak* v. *Seiler Corp.*, 415 Mass. 625, 629-630 (1993)(counsel's objection to trial judge's failure to give proposed instruction was insufficient to preserve issue for appeal, where the substance of the objection differed from that of the proposed instruction).

[10]The Jarrys further contend that the judge erred in failing to give proposed instruction No. 11. However, since the Jarrys also failed to object to its omission, that issue is not properly before us. See *Karen Constr. Co.* v. *Lizotte*, 396 Mass. 143, 149 (1985).

[11]The verdict forms do not indicate which standard the jury applied to Drs. Kessler and Lee.

[12]As to Dr. Seiler, under the theory of liability the plaintiffs put forth at trial, any error would be harmless. Although Dr. Seiler recommended

there was no factual basis for its admission. However, we need not consider whether it was error to admit the circular, as the Jarrys failed to preserve the issue below.[13]

During the bench conference immediately following the plaintiffs' objection to the introduction of the package circular, Dr. Corsaro's attorney told the judge that "it's something he has testified he relied on." One of the grounds raised by the plaintiffs in their objection was that Dr. Corsaro would not have had the circular in his office.[14] The judge admitted the package circular "for the sole purpose of indicating what information the doctor had about Tussionex when he prescribed it when he was forming his judgment." Subsequent to the admission of the circular, plaintiffs' counsel cross-examined Dr. Corsaro extensively with respect to his knowledge and use of the circular. During this cross-examination, Dr. Corsaro gave testimony which tended to undermine his claim that he had seen the circular prior to treating Anastasia. No motion to strike the circular was made at that time.

After the close of the evidence, the plaintiffs made an oral motion to have the circular either struck from evidence or the hearsay studies redacted. The plaintiffs, at that time, asserted

---

continuation of the use of Tussionex, the parents did not administer any more of the drug after seeing Dr. Seiler. Even if Dr. Seiler had been negligent in recommending continued use of the drug, the plaintiffs could not show proximate cause since the recommendation was not followed.

[13]On appeal, the plaintiffs argue only that the circular should not have been admitted because there was no evidence that Dr. Corsaro relied on it when he prescribed Tussionex for Anastasia. The plaintiffs do not argue that the circular was not admissible as matter of law, and we do not decide that issue here. See and compare *Grassis* v. *Retik*, 25 Mass. App. Ct. 595, 599 n.5 (1988).

[14]Counsel for the plaintiffs argued as follows:

"It comes as a complete surprise to me. It's a piece of literature that was not promulgated. There was no given, no identification of it when we were — prior to disclosure all exhibits for the pretrial memorandum, there was no mention of it by counsel prior to this moment. I'm not prepared to cross examine on it and I think for all of these reasons, because I was entitled to thirty day notice, it's highly prejudicial to introduce this hearsay document. Further this is not a package that the doctor would have had in his office and handed it out. So it's not likely that he had this package."

that there was no competent evidence that Dr. Corsaro had read, or relied on, the circular in treating Anastasia. This request, however, was too late. A party must move to strike erroneously admitted evidence prior to the close of evidence in order to preserve the issue for appeal. *Solomon* v. *Dabrowski*, 295 Mass. 358, 360 (1936). See also *Camerlin* v. *Marshall*, 411 Mass. 394, 398 (1991) (motion to redact after close of evidence was untimely). The plaintiffs' motion was therefore untimely.[15]

We do not reach the plaintiffs' contention that Dr. Corsaro's counsel's closing argument regarding the product circular was improper, as no objection was taken to that portion of the argument. See *Rice* v. *James Hanrahan & Sons*, 20 Mass. App. Ct. 701, 712 (1985), and cases cited.

*Judgment affirmed.*

---

[15]The plaintiffs further contend that the admission of the circular prejudiced their case against Dr. Seiler. However, for reasons discussed above, we do not consider the merits of this contention. See note 12, *supra.*