Barrett, J.
This case arose out of a dispute about the ownership of a drainage ditch located in the northeast corner of the Meadow Bog, a cranberry bog in West Barnstable that has been owned and operated since 1912 by the family of plaintiff James A. Jenkins (“Jenkins”). A survey plan recorded in the Barnstable County registry of deeds in 1985 shows Jenkins’s ownership of the drainage ditch. Although defendant James H. Ellis (“Ellis”) has lived next door to the bog since 1964, he claimed for the first time in 1996 that he was the owner of the drainage ditch, which forms the boundary between the parties’ properties. On January 3, 2003, Jenkins, eleven years Ellis’s junior, observed the seventy year old Ellis cutting down trees on the bank of the ditch. Jenkins claimed he tried to assist the elderly Ellis out of the ditch; Ellis contended that Jenkins assaulted him. Jenkins and Ellis were the only witnesses to the incident.
A Barnstable police officer called by Ellis took a report from both Ellis and Jenkins. Following the officer’s investigation, a criminal complaint was issued against Jenkins for assault and battery on a person over sixty years of age. The Cape Cod Times noted Jenkins’s arraignment on the charge. After a jury-waived trial, Jenkins was acquitted. He then filed this action against Ellis for interference with a contract, conversion, trespass, malicious prosecution, and abuse of process. Ellis counterclaimed for contractual interference, destruction of property, trespass, and assault and battery. Jenkins’s claims for contractual interference and conversion, and Ellis’s claims for contractual interference and destruction of property, were not pursued at trial. A jury found for Jenkins on each of his remaining claims, awarding him $35,000.00 in damages for malicious prosecution, $30,000.00 for abuse of process, and $10,000.00 for trespass. The jury also found against Ellis on his counterclaims. This appeal by Ellis followed.
1. Ellis first argues that it was error to deny his request for a directed verdict on Jenkins’s malicious prosecution and abuse of process claims. The request was made after Jenkins’s opening statement, at the conclusion of Jenkins’s case-in- *110 chief, and after Ellis presented his case. The requests asserted that Jenkins was unable to malee out a prima facie case because Ellis, himself, neither instituted the criminal proceedings, nor used process against Jenkins. This argument was reiterated in Ellis’s unsuccessful motion for judgment notwithstanding the verdict.
‘To make out a claim for malicious prosecution, a plaintiff must prove: ‘(1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff.”' Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 405 (2002), quoting J.R. NOLAN & L.J. SARTORIO, TORT LAW §77, at 88 (2d ed. 1989). The elements of an abuse of process claim are that: “(1) ‘process’ was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.” Id. at 407, quoting Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975). “[T]he same facts can give rise to an action for abuse of process and malicious prosecution.” Franco v. Mudford, 2002 Mass. App. Div. 63, 64.
It is Ellis’s position that he did no more than report the ditch incident to a police officer who then used his independent judgment to seek a criminal complaint. Ellis correctly states that, as to the claim of malicious prosecution, “[tjhe mere transmission of information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings, has never been held sufficient to support an action for malicious prosecution.” Correllas v. Viveiros, 410 Mass. 314, 318 (1991). Ellis reads this type of immunity too broadly, however. The exemption relied upon by Ellis is dependent upon the transmission of truthful information. Burnham v. Collateral Loan Co., 179 Mass. 268, 274 (1901) (person must “fairly and truthfully” disclose information). No such immunity is available if the relayed information is deemed false. See Ziemba v. Fo’cs’le, Inc., 19 Mass. App. Ct. 484, 488 (1985). See generally D.B. DOBBS, TORTS §431, at 1217 (2000). The reason for this “truthfulness” requirement is evident. A public official cannot make a reasoned judgment whether to pursue criminal process unless the information upon which he or she relies is truthful.
Quite apart from Ellis’s position that Jenkins failed to make out a prima facie case because the Barnstable officer used his independent judgment, the jury in this case was free to discredit Ellis’s account of the incident, choosing instead to believe Jenkins that no assault had occurred and that Ellis concocted the criminal episode to gain an advantage in the property dispute. Such a finding by the jury — and there is no reason to suspect that they did not so find — would support the maintenance of both the malicious prosecution and abuse of process claims.
2. Ellis next argues that the trial judge abused her discretion in denying him the opportunity to use evidence of two criminal charges brought against Jenkins during his cross-examination of Jenkins. Before we address this issue, we first consider Jenkins’s contention that the general issue was not properly preserved. We reject this argument. Although the transcript does not contain any objection to the denial of a right to cross-examine Jenkins, Ellis filed a motion for a new trial raising this general issue. In ruling on that motion, the trial judge acknowledged that the issue was raised at trial. It appears that the issue was raised at sidebar and was not recorded.
The general issue raised by Ellis in his motion for a new trial is divided into a two-part claim of error. First, Ellis argues that Jenkins opened the door to the use of the charges by his testimony that the filing of criminal charges against him did *111 not occur “often.” Ellis’s argument is that the use of the criminal charges would have undermined Jenkins's credibility. Second, Ellis asserts that the criminal charges would have been relevant in the jury’s consideration of Jenkins’s alleged emotional distress damages. On appeal, with a slightly different nuance, Ellis suggests that because Jenkins opened the door during his direct examination, Ellis should have been able to cross-examine the plaintiff about how often he had been arrested.
While the general issue of the use of Jenkins’s subsequent criminal charges was preserved at trial, the only evidence that we have of exactly what was so preserved is the written ruling of the trial judge on Ellis’s motion for a new trial. The judge states in that ruling that Ellis sought to use the two subsequent criminal charges, neither of which resulted in a conviction, for impeachment purposes. Implicit in that statement is the rejection by the trial judge that Ellis sought to offer the charges for any other puipose. Based on this record, we cannot find that the judge abused her discretion in disallowing the use of the charges.[2]
3. Ellis also argues that the damages assessed on the malicious prosecution claim and abuse of process claim are duplicative. In instructing the jury on the issue of damages, the trial judge gave a general instruction on mental pain and suffering and more specific instructions on damages as they related to the malicious prosecution claim and abuse of process claim. As to the former, the judge instructed that “the plaintiff may recover compensatory damages for his loss of earnings, harm to his reputation, [and] for the emotional distress suffered as a result of the malicious prosecution.” The trial judge then instructed the jury that, on the abuse of process claim, they “may consider damages to compensate the plaintiff for injury to business, reputation, and influence.” If, as argued by Ellis, the damages awarded under each count were duplicative, the only commonality, in view of the instructions given to the jury, is damage to “reputation.”[3] The record does not indicate, however, that Ellis made any objection to the instructions as given. Nor did he request an instruction on duplication of damages. Had there been an objection or a request for a further instruction, the trial judge might well have addressed the issue to Ellis’s satisfaction. When, at trial, a party fails to object to a given jury instruction, that party waives his right to pursue the matter on appeal. Jarry v. Corsaro, 40 Mass. App. Ct. 601, 603 (1996). Similarly, a party cannot later be heard to complain that a jury instruction was not given when he failed to request it of the trial judge. Milley v. Prudential Ins. Co. of America, 5 Mass. App. Ct. 38, 39 (1977).
4. Ellis also seeks to reduce the $10,000.00 award on the trespass count on the ground that the only evidence of damages was the $6,500.00 value of the trees he cut down. One who is wronged by a trespasser, however, may recover damages in addition to the cost of restoring the land. See Meagher v. Driscoll, 99 Mass. 281, 285 (1868) (enhancing damages award for injured feelings upon evidence of a wil *112 ful or wanton trespass); Fillebrown v. Hoar, 124 Mass. 580, 585 (1878) (same). See generally RESTATEMENT (SECOND) OF TORTS §929(1) (c) (1979) (damages include “discomfort and annoyance” to plaintiff as occupant); J.R. NOLAN & LJ. SARTORIO, TORT LAW §4.3, at 71-72 (2005). There is no indication that an award of general damages for Ellis’s trespass, in addition to the compensatory award, was not the jury’s intention here.
Moreover, Jenkins testified that he uses the drainage ditch to control the water level of the bog, which is critical to a successful cranberry crop. He also testified that, to function properly, the ditch has to be clear of any trace of debris, and that the trees Ellis cut down had served not only to screen out debris, but also to stabilize the banks of the ditch with their root systems. Thus, the jury could have found that Ellis’s removal of the trees caused damage to Jenkins beyond the mere cost of restoring the trees.[4]
5. Finally, Ellis challenges the introduction of testimony of a member of the Barnstable Conservation Commission and of a plot plan depicting the disputed area. A review of the record indicates, however, that there was no objection to the testimony, or to the plan, when offered. Ellis, thus, waived appellate consideration of those issues. Freyernmth v. Lutfy, 376 Mass. 612, 616 (1978). See Davis v. Walent, 16 Mass. App. Ct. 83, 91 (1983).
Appeal dismissed.
So ordered.

 A motion for a new trial may not be used as a vehicle to compel the judge to rule on questions of law that could have been raised at trial but were not. Eva-Lee, Inc. v. Thomson Gen. Corp., 5 Mass. App. Ct. 823 (1977).

 We note that apparently in response to a jury question, and without objection, the trial judge indicated that attorney’s fees for defending the prior action may be awarded on either the malicious prosecution or abuse of process claim.

 We note that in his closing argument, Ellis made no reference to the issue of damages on these claims.