Hand, J.
Appellants Vivian N. Berger and Steven' L. Berger (collectively, “Bergers”) bring this appeal contesting a jury verdict rendered against them and in favor of appellee Third Plane Montessori, Inc., d/b/a Montessori Middle School (“School”). For the reasons below, we uphold the verdict and affirm the judgment.
In August, 2007, the Bergers met with a representative of the School, Jeff Allen (“Allen”), to explore the prospect of enrolling one of the Bergers’ children for the 2007-2008 school year. One topic of discussion, both at this initial meeting and during the parties’ subsequent communications, was the extent of any financial aid available for the child’s tuition. Pending a decision on the amount of financial aid available to them, the Bergers declined to sign the School’s written agreement that they would be responsible for the full annual tuition of $12,500.00. Regardless, the School permitted the Bergers to enroll their child, on the mutual understanding that the final tuition figure would be determined as soon as possible.
The Bergers completed paperwork to provide an advisory opinion on the Bergers’ ability to pay the child’s tuition. In early autumn of 2007, after school had started, the Bergers met in person with Allen, who advised them that the financial aid agencies evaluating the Bergers’ submissions had recommended that the Bergers be awarded aid in an amount that would leave the Bergers responsible for paying $1,060.00 for the 2007-2008 school year’s tuition. Allen told the Bergers, however, that the School was unable to offer aid in the amount recommended. Instead, the School would offer its standard maximum reduction to $9,000.00 per year. This discussion did not end amicably from the Bergers’ perspective; the Bergers, together and individually, exchanged e-mails with Allen on the subject of the financial aid recommendation, the School’s more limited tuition reduction, and the Bergers’ perception of how the matter was being handled by Allen and by the School. The Bergers later wrote to the School’s board of directors with regard to *60 the tuition dispute. The School reiterated its position that the minimum tuition for the Berger’s child was $9,000.00, but offered the Bergers a payment plan and urged them not to withdraw their child from the School. The Bergers advised the School that they would “do the best [that they could]” with respect to the tuition. The child remained a student at the School for both the 2007-2008 and 2008-2009 school years.
Over the course of their child’s enrollment at the School, the Bergers made some tuition payments to the School. In early 2009, the School contacted the Bergers by e-mail asking when the Bergers planned to bring the tuition account current. The matter was not resolved, despite a series of communications back and forth between the parties.[3] This litigation ensued. The School apparently brought claims against the Bergers for breach of contract; the Bergers appear to have filed counterclaims for breaches of the covenant of good faith and fair dealing, and to recover tuition overpayments.[4]
The case was tried to a jury over the course of one morning. Both parties rested, and the court instructed the jury on the applicable law, all before the lunch recess. It is the Bergers’ position that they believed that the court had broken for lunch before completing the jury instructions, and that they expected the court to return to their case at the commencement of the afternoon session. The Bergers argue, without benefit of any sworn testimony or other supporting evidence, that they returned from the lunch break to find their jury already out and deliberating, an unrelated matter underway in the trial court room and before the trial judge on then-case, and opposing counsel as nonplussed as they were about the situation. Some hours later on the same day, the jury returned with a verdict; the jury found for the School on its claims against the Bergers, awarding damages of $10,400.00, and against the Bergers on their counterclaims.
1. The Bergers’ appeal focuses on four aspects of the trial judge’s handling of the jury charge and charging process. The weight of the Bergers’ argument is directed to certain comments made by the trial judge in the presence of the jury: first, on the judge’s views about e-mail communications, generally; and second, on the judge’s experience with unanimous civil verdicts. In the course of his final instructions to the jury, and while explaining to the jury the elements of a contract, the judge addressed the fact that some valid contracts are reduced to writing while others are not. After clearly emphasizing to the jury that, in deciding whether a contract exists, the significance of any particular writing is “up to [the jury] to decide,” the judge briefly digressed, mentioning his own unfamiliarity with and reservations about e-mail as a communication tool. His comment, highlighted by the Bergers in their brief, that he “would never deal personally with e-mails, but, you know, the rest of the world lives by this stuff now,” was a passing observation that did not amount to any sort of instruction. We review a trial court’s rulings for “prejudicial error.” G.L.c. 231, §108. While the judge’s comments might better *61 have been left unsaid, they did not rise to the level of reversible error. Following his comments, and curing any possible prejudice that those comments might have suggested, the judge went on to instruct the jury that it was their obligation to “look at” the e-mails in evidence “to see whether anyone read it or didn’t write it and cross-referenced it or whatever you’re going to do in the jury room.” The judge’s instructions also clearly directed the jury to review all of the evidence in the case, assigning to it whatever weight the jury felt it was fairly entitled to receive, and to disregard anything that the judge had said, and any opinion the judge might have expressed in the course of the trial. The comments did not amount to prejudicial error.
We are likewise unpersuaded that the trial judge’s comments in the presence of the jury about the frequency of unanimous civil jury verdicts amounted to reversible error in this case. During the precharge, the judge said:
“Okay. Juror No. 1, Ms. Gonsalves, you’re going to be the jury ... foreperson. At the end of the trial, there’s a jury slip that you have to fill out. You check boxes. That’s all. There is a claim here which you have to rule on, and there’s also a counterclaim that’s been filed. So, those two things have to jive when you’re trying to figure it out, and you just check off whatever boxes that you, as a jury, 5 out of 6 of you of course, come to a conclusion.
“And unlike a criminal case which requires a unanimous jury, a civil case can be decided by 5 out of 6. I’ve never actually seen it. Every jury I’ve ever done civilly has been unanimous, but ifs one of those little rules we have in court that for some reason in treating civil cases with a little bit less formality than the criminal cases, ifs a 5 out of 6 jury.”
In his final instructions, the judge made a similar observation:[5]
‘You still only have to come up with five votes though, but there won’t be an alternate. All seven of you — because you know what — I’ve been doing that lately, and I forgot to do that. I’m glad you brought that up, Mr. Perry [appellee’s counsel],... Normally, you’d take and you’d pick an alternate, and that person sits reading the paper somewhere while the other six do it, and I’ve never understood that. I’d let them all go.... I’ve never actually seen a jury that had a 5 out of 6 anyway. They always come back unanimous.”
Considering the judge’s instructions and comments to the jury as a whole, however, including the judge’s clear instructions to the jury about the number of jurors required to agree; the explicit distinction in his instructions to the jury between the civil majority rule applicable to this case and the unanimous verdicts required in *62 criminal trials; and the fact that he did not suggest that unanimity was desirable, only that it was routine, we find no reversible error in those comments.
2. The next facet of the judge’s handling of the case appealed by the Bergers was the judge’s instruction to the jury that five of seven deliberating jurors would constitute the majority needed to reach a valid verdict. General Laws c. 234, §34A, to which the Bergers cite in support of their argument on this issue, provides that “[i]n any civil action the jury shall be instructed that the agreement of five sixths of its members shall be sufficient to render any specific or general verdict.” As frequently happens, however, the parties to a civil action may agree to a different mathematical arrangement, waiving the right to a five-sixths agreement in favor of a verdict by some greater or lesser proportion. See Mass. R. Civ. R, Rule 48 (“The parties may stipulate that... a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury.”); Jamgochian v. Dierker, 425 Mass. 565, 570-571 (1997) (no reversible error where, without objection, court permitted 14 jurors to deliberate on automobile tort claim and instructed jury that 11 of 14 jurors were required to agree on verdict). Here, the parties agreed that all seven seated jurors could deliberate on the case.'[6]
*63 The Bergers’ arguments with respect to the trial judge’s handling of the jury verdict slip include the assertion that neither they nor the jury were ever shown the verdict slip before it was sent in to the jury,[7] that the judge erred in failing to explain the verdict slip to the jury, and that the judge made comments to the jury that deprived the Bergers of the benefits of G.L.c. 234, §34A. As discussed below, the Bergers have not shown any prejudicial error in the court’s actions.
A jury verdict slip “has the status of an instruction to the jury.” Hobbs v. TLT Constr. Corp., 78 Mass. App. Ct. 178, 180 (2010). Rule 51(b) of the Mass. R. Civ. P. permits any parly to an action to file written requests for jury instructions.[8] In this case, it appears from the record that no party to the case filed requests for jury instructions nor any proposed verdict slip; the verdict slip that the jury used to record its verdicts provided spaces for general verdicts on the School’s claims and the Bergers’ counterclaims. Rule 51(b) also provides that the court “shall” give the parties an opportunity to object to the instructions — and presumably to the jury verdict slip, as well — out of the hearing of the jury. The courf s deviation from the requirements of Rule 51(b) was an error; but given the fact that the Bergers made no request for any particular form of verdict slip, and the fact that the form used by the court in this case called only for a general verdict, we find nothing prejudicial to the Bergers in that error.
The Bergers’ next argument, that the judge failed to instruct the jury on the verdict slip, appears to be factually flawed. As noted, the judge did, in fact, discuss the *64 jury verdict slip and the mechanics of its completion with the jury during his precharge.[9]
“Okay. Juror No. 1, Ms. Gonsalves, you’re going to be the jury ... foreperson. At the end of the trial, there’s a jury slip that you have to fill out. You check boxes. That’s all. There is a claim here which you have to rule on, and there’s also a counterclaim that’s been filed. So, those two things have to jive when you’re trying to figure it out, and you just check off whatever boxes that you, as a jury, 5 out of 6 of you of course, come to a conclusion.”
The judge’s explanation informed the foreperson and the jury that they would be required to provide verdicts on the “claim” and the “counterclaim” — underscoring the jury’s obligation to consider both the School’s and the Bergers’ evidence and arguments — and instructed them on the number of jurors required to agree on each verdict. There was no error in this instruction and no prejudice to either party. Further, to the extent that the Bergers were dissatisfied with the substance of the explanation given by the judge about the verdict slip, the burden was on the Bergers to bring the matter to the judge’s attention by objecting. See, e.g., Jenkins v. Ellis, 2008 Mass. App. Div. 109, 111, citing Jarry v. Corsaro, 40 Mass. App. Ct. 601, 603 (1996). They did not do so.
4. Lastly, we find no compelling basis for appeal in the Bergers’ arguments about possible deficiencies in the procedure by which the jury was sent to its deliberations. The fact that the trial judge did not read, verbatim, the District Courtis Model Jury Instructions is irrelevant. The court is required to “clearly, adequately, and correctly” explain to the jury “the principles that ought to guide and control their action.” Torre v. Harris-Seybold Co., 9 Mass. App. Ct. 660, 678 (1980). The trial judge “enjoys significant latitude in framing the language of his jury instructions.” Grant v. Lewis/Boyle, Inc., 408 Mass. 269, 275 (1990). While the model instructions are a helpful tool toward that end, it is the substance, and not the form, of the instruction that controls. In our view, the trial judge in this case provided the required substance in his own words. On the record before us, we cannot say whether the court officer or officers were sworn before taking charge of the jury. Even if not, however, in the context of this case, where the Bergers have not raised any specter of jury contamination or outside coercion or any of the other concerns against which the jury officer is intended to protect the jury and the trial process, the Bergers argue only a lack of decorum, and not prejudicial error.
Accordingly, we affirm.
So ordered.

 The communications between the parties from that point on were primarily, if not exclusively, conducted by e-mail.

 We come to this conclusion from a review of the record before us, which does not include copies of the complaint, answer, or counterclaims.

 This exchange was part of a discussion among the parties and the trial judge about the number of jurors permitted to deliberate on the case and to the majority required for a verdict, a point also under appeal by the Bergers, and to which we turn next.

 As the trial judge prepared to select an alternate juror from among the seven seated jurors, the parties agreed that all seven jurors should deliberate on the case. The judge then explained to the jurors that agreement of 5 of the 7 deliberating jurors was required for a verdict. The relevant portions of that exchange and instructions follow:
[APPELLEE’S COUNSEL]: “Your Honor, if I may, depending on —”
THE COURT: “Would you like to add something?”
[APPELLEE’S COUNSEL]: “I don’t have a problem with [all seven jurors deliberating]. I feel bad when somebody has to sit outside in the hallway.”
THE COURT: “If you want all 7 to go, that’s fine with me too.”
[APPELLEE’S COUNSEL]: “How do you guys feel about that?”
MS. BERGER: “I’m sorry?”
THE COURT: “In other words, instead of picking an alternate, let all 7 of them decide the case.”
MS. BERGER: ‘Yes. Yes. That’s fine.”
THE COURT: “That’s fine?”
MS. BERGER: “Sure.”
[APPELLEE’S COUNSEL]: “Okay.”
THE COURT: ‘You still only have to come up with five votes though, but there won’t be an alternate. All seven of you — because you know what — I’ve been doing that lately, and I forgot to do that. I’m glad you brought that up, Mr. Perry.”
[APPELLEE’S COUNSEL]: ‘Yeah, I’ve been doing it forever on civil.”
THE COURT: “Normally, you’d take and you’d pick an alternate, and that person sits reading the paper somewhere while the other six do it, and I’ve never understood that I’d let them all go.”

 Although the Bergers’ appendix does not include any evidence, whether by affidavit or otherwise, supporting this assertion, the trial transcript included in the appendix does not indicate that the parties or anyone else were shown the verdict slip before the jury began deliberating. While we are well aware of the fact that, in practice, the parties may review exhibits, the verdict slip, and other documents when the judge is off the bench and the recording system is not activated, we accept the Bergers’ representation that they did not have the opportunity to review the verdict slip as the rule provides.

 The full text of Rule 51(b) follows:
“(b) Instructions to Jury: Objection. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless' he objects thereto before the jury retires to consider its verdict, standing distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.”

 While Rule 51 (b) calls for the court to instruct the jury “after the arguments are completed,” Mass. R. Civ. R, Rule 51(b), we find no prejudicial error in the court’s instructing the jury on the mechanics of completing the verdict slip at an earlier point in the trial. This is particularly true where, as in this case, the verdicts slip calls only for general verdicts.