Walsh, P.J.
This is a civil action in which the plaintiffs, Daniel and Sandra Thompson, sought damages against the defendants, Ernest and Lucretia Robitaille, alleging false and fraudulent misrepresentation, breach of implied or express warranty, negligence, and violation of G. L. c. 93A. Defendant denied the allegations and filed a third-party complaint against James A. Mutter, d/b/a Mutter Real Estate, and Kirke JR. Henshaw, d/b/a Henshaw Artesian Well Drilling, and Kirke R. Henshaw, Inc., as third-party defendants for indemnification.
In 1971, defendant Ernest R. Robitaille, and his former wife purchased the subject property and house. In 1973. the artesian well below the house was struck by lightning causing damage, and the third-party defendant, Henshaw, was asked to repair the system. In 1974, the system developed air in the pipes and Henshaw was again employed to correct the problem. Henshaw recharged the system and informed Robitaille that there was not enough water in the system and that a new well was needed. Robitaille, his wife having previously died, listed the property for sale with Mutter, informing him of an artesian well on the property but not discussing the adequacy of the water supply system. Mutter showed the plaintiffs the house and property. Later, plaintiffs met with Robitaille at Mutter’s office and Robitaille explained the improvements in the water supply system to them. Plaintiffs inquired as to any problems with the water supply and defendant informed them that there was plenty of water. Mutter said nothing about the water supply. The property was conveyed to the plaintiffs in 1977 for $42,000.00. Defendant’s second wife, Lucretia, did not take part in the sale. On December 18, 1977, plaintiffs and their two children moved into the house and two days later ran out of water. Plaintiffs, on defendant’s *349 instructions, contacted Henshaw who recharged the system which functioned for one day before running out of water. Subsequently, the system was recharged afew more times with the same result and in February 1978 the well was tested as producing ten and one-half gallons per hour while a satisfactory flow is five gallons per minute. Plaintiffs continued to incur expenses and their living habits wete hampered because of the problem. The only solution would have .been to drill 'a new well with an estimated cost of about $3,000.00 which plaintiffs could not afford. The fair market value of the property, with the water supply problem, on the date of purchase was about $37,000.00 rather than the $42,000.00 paid by plaintiffs. There was also evidence of expense incurred to correct the water supply system.
The case came to trial and defendant, denying the allegations, contended that if there were any misrepresentations or deceit about the water supply problem, then such action was by Mutter or Henshaw, and if there was any problem with the water supply system, it was due to Henshaw’s faulty materials or negligent installation. After hearing testimony by the plaintiffs, third-party defendant, Henshaw, and Robitaille the court found that Mutter had not misrepresented the water supply system and dismissed the charges against him without objection. Later, on direct examination, defendant was asked to testify about his conversations with Henshaw. The testimony was expected to contradict Henshaw’s version of the conversations. However, plaintiffs attorney lodged an objection which was sustained. Defendant contends that the testimony should be allowed. On cross-examination, plaintiffs attorney asked defendant whether he and his attorney spoke about Henshaw’s work or about problems with the water supply system. Defendant’s attorney objected citing the attorney-client privilege.The objections were overruled and defendant answered “no” to both questions. At the conclusion of plaintiffs case, the trial judge asked defendant’s attorney whether he had any evidence of negligence by Henshaw in view of defendant’s testimony that he was very satisfied with Henshaw’s work. After receiving a negative response, the trial judge indicated that negligence against Henshaw was no longer part of the case. Also, at the conclusion of plaintiffs case, the court asked defendant’s attorney to make an offer of proof as to his theory of liability and facts expected to be proved against Henshaw. The court stated its understanding of defendant’s theory to be that if Henshaw could be found to have told defendant that there was plenty of water in 1973, and if defendant represented this to plaintiff in 1977, and if there was not an adequate supply of water when the property was sold, then Henshaw was partially liable. Defendant agreed with this assessment and then the trial court judge entered judgment for Henshaw over counsel’s objection. The court then found for plaintiffs in the sum of $6,172.34 against defendant Ernest Robitaille and found for Lucretia Robitaille on all counts.
Defendant third-party plaintiff Robitaille has appealed. A number of issues are presented to the court.
Whether a trial judge errs if he excludes questions presented by an attorney to his client for the purpose of impeaching a witness when the matter had been investigated on cross-examination?
Whether a trial judge errs if over objection he requires a witness to state whether he and his attorney have spoken about a certain issue?
Whether it is error for a trial judge to enter a finding in favor of a third-party defendant after substantial evidence has been presented and after the third-party plaintiff has made an offer of proof?
Whether it is error for a trial judge to issue a ruling which does not reach the *350 same result as his granted requests for rulings when the facts necessary to support the requested rulings have not been established?
Whether a trial judge may, in a deceit case, award the plaintiff benefit of the bargain damages as well as out-of-pocket expenses proximately caused by defendant’s misrepresentation?
The defendant contends that the trial judge’s refusal to allow defendant’s attorney to question defendant concerning conversations with Henshaw denied the defendant his right to impeach a witness. The fact that the defendant has a right to impeach a witness is not disputed. Sears v. LeBetter, 137 Mass. 374, 376 (1884). However, the judge in the case at bar was not questioning defendant’s right to impeach a witness but rather refused to allow defendant to impeach by presenting evidence which would have been repetitious of previous testimony. The admission of cumulative evidence res'ts within the discretion of the trial judge. McGlinchy v. Henderson, 240 Mass. 432, 434 (1922). Robitaille on cross-examination had already testified to his conversations with Henshaw. It was then within the trial court’s discretion to decide if the testimony should be heard for a second time.
The defendant, claiming the attorney-client privilege, contends that the trial judge erred in requiring him to testify as to whether or not he and his attorney spoke in reference to problems with Henshaw’s work or the water supply. The general rule is that the attorney-client relationship protects matters communicated by the client under confidences arising from the professional relationship. Panell v. Rosa, 228 Mass. 594, 596 (1917). However, while the prevention of disclosure of such information is necessary for the administration of justice, it has frequently been held that the attorney-client privilege runs contrary to the interest of full disclosure of relevant information and, therefore, should be narrowly construed. Hatton v. Robinson, 31 Mass. (14 Pick.) 416, 422 (1833); Commonwealth v. O’Brien, 377 Mass. 772, 775 (1979). The attorney-client privilege attaches not to the relationship but only to certain communications made by the client to the attorney. Gretsky v. Miller, 160 F. Supp. 914, 915 (1958). The important point is that the privilege attaches to communication, not to the fact that there has been a communication. The fact that a person has emloyed an attorney, consulted with him and been advised by him on a certain subject-matter is not a confidential communication. Behrens v. Hironimus, 170 F. 2d 627, 628 (1948). What facts were exactly communicated are privileged. It is the substance of a communication which is privileged not the fact that it took place. In the case at bar, defendant was asked if he and his attorney had spoken about the problems with Henshaw’s work or the water supply. This was asking whether the communication took place not what was the substance of the conversation and as such is not privileged. When Robitaille answered the question he was not testifying to the substance of the communication, but rather as to whether or not the communication took place.
The defendant contends that the trial judge erred in entering a finding in favor of Henshaw before Robitaille had an opportunity, as third-party plaintiff, to present his case. To support this contention defendant cites Dist./Mun. Cts. R. Civ. P., Rule 41 (b) (2) which allows a trial court judge, in an action tried without a jury, to dismiss a complaint if after the plaintiff has completed the presentation of his evidence he has not shown a right to relief based on the facts and law.[3] *351 Defendant contends that he was not given the opportunity, as third-party plaintiff, to present or complete his case and prior to this dismissal is improper.
This case presents a unique situation in that dismissal under said rule was against a third-party plaintiff. Unique because the trial judge was in a position to hear a great deal of evidence when the plaintiff presented his claim against the defendant and apparently combined that evidence with the third-party plaintiffs offer of proof to conclude that Robitaille had not shown a right to relief. The rationale behind the allowance of third-party claims, namely to prevent the needless duplication of evidence and trials [see A. R. Belli, Inc. v. Boston Edison Co., 50 Mass. App. Dec. 81, 83-84 (1972)], would seem to sanction this type of dismissal for the trial judge could have concluded that Robitaille would use the same evidence, presented to defend himself against plaintiff’s complaint, in order to prosecute his claim against third-party defendant, Henshaw. This appears to have been a justifiable conclusion for in defending against plaintiffs claim Robitaille was cross-examined at length by his counsel. Through this questioning, Robitaille was able to give his version of the conversations with Henshaw. This is the same type of evidence that defendant would have to*have used in bringing his case of misrepresentation against Henshaw and the trial judge having heard the evidence once could adequately rule on the matter. Rule 41.(b) (2) allows dismissal after the plaintiff has completed the presentation of his case. In the case at bar, the trial judge could have determined, after hearing both Henshaw and Robitaille testify as to their conversation, that the evidence relating to misrepresentation was complete and after asking for an offer of proof was in an adequate position to rule on defendant’s right to relief. On the negligence issue, the trial judge had asked whether he had any evidence of Henshaw’s negligence in view of the fact that Robitaille testified that he was satisfied with Henshaw’s work. When defendant’s attorney answered “no”, the judge was justified in concluding that defendant had fully presented his third-party claim and was in a competent position to rule on the issue.
Once the evidence is complete, Rule 41 (b) (2) allows a judge to dismiss an action on motion of a defendant. In situations such as the case at bar, where there is a third-party claim, the trial judge may be initially exposed to the third-party plaintiff s case when that party presents evidence in defending himsqlf against the plaintiff in the action. The judge hearing all of this evidence is in an adequate position to rule on dismissal and need not be required to allow defendant to present his case for a second time as third party plaintiff. The trial judge’s action in dismissing the case against Henshaw was therefore proper.
For similar reasons, the court was also justified in dismissing the case against Mutter. After hearing the testimony of both plaintiffs and Henshaw, the court indicated that the evidence showed that Mutter had no knowledge of the water problem and made no representations concerning the problem. The trial judge could therefore dismiss the action against Mutter under said Rule 41 (b) (2).[4]
The defendant also contends that the trial judge’s disposition of the case was inconsistent with the requests for rulings that he granted. The argument is without merit. It is incorrect to consider requests for findings of fact as requests for rulings of law, which defendant apparently did. Defendant’s requests for rulings were a combination of a hypothesized set of facts combined with a *352 proposition of law. Some examples are quoted in the margin.[5] If the proposition of law is correct, the judge is obligated to grant the ruling. However, if the hypothesized facts do not, in reality, represent the findings of fact of the court in the case, then the ruling could be granted with the admonition that it is irrelevent. That is the action which the trial judge took in the case at bar. They were irrelevent to the case at bar, because the defendant had not proved the facts upon which the rulings are based. Without the premise (facts), the conclusions do not apply Gibbons v. Denoncourt, 297 Mass. 448, 452 (1937).
The requests might better have been denied, Gibbons, v. Denoncourt, supra, since they were mostly requesting findings of fact, but granting them and deeming them irrelevant was not error. The judge made extensive findings of fact which were warranted by the evidence and concluded:
(1) That at the time Robitaille told the plaintiffs that there was plenty of water on the property, he was referring to the adequacy of the water supply in the house, and not to the dug wells on the premises, as his improvements to this system had been the subject of the discussion prior to this statement by Robitaille.
(2) That at the time Robitaille made his statement about the adequacy of the water system in the house, he knew that the water supply was grossly inadequate for family residential purposes, as he had been so informed by Henshaw in 1974, and tests conducted within two months after the sale to the plaintiffs revealed this to be the case.
The defendant also claims error in that his requests for rulings that the evidence (1) did not warrant a finding for plaintiff and (2) did warrant a finding for defendant were both denied. There is no error in the denial of the former as is plainly shown from a summary of the evidence and the judge’s findings thereon.
The latter is a different situation as such a request ought to have been granted if a finding for defendant was permissible. If error, however, it was not prejudicial as the judge's failure to give such a ruling was rendered immaterial by his findings. Bresnick v. Heath, 292 Mass. 293, 298 (1935); Ricciardone v. Carvelli, 334 Mass. 228, 231 (1956).
Finally, the defendant contends that the damages awarded by the court were excessive. To support this, defendant cites contract cases which stand for the proposition that the measure of damages is the market price of correcting the performance. However, in the case at bar, damages were based not only on contract but also on deceit. In cases of deceit, the Massachusetts courts have awarded damages based on the difference between the value actually received and the value of what plaintiff would have received had the representations been true (benefit of the bargain). Morse v. Huchins, 102 Mass. 439, 440 (1869); Piper v. Childs, 290 Mass. 560, 562 (1935). Although this is the basic measure of damages in most deceit cases, the Supreme Court has recognized that the benefit of the bargain rule need not be strictly followed in all cases and may be modified or supplemented to prevent injustice by awarding such damages as will make plaintiff whole. Rice v. Price, 340 Mass. 502, 509-511 (1960). The trial judge, in the case at bar, apparently felt that benefit of the bargain damages were not enough to make plaintiff whole and so awarded out-of-pocket damages in addi *353 tion. The out-of-pocket expenses were proven at trial and were shown to be expenses proximately caused by defendant’s misrepresentation.[6] Under the Rice rationale, the trial judge’s award was proper.
Defendant also complains that plaintiffs’ award exceeded the amount requested in their complaint. However, a party may be awarded greater damages than the ad damnum. Dist./Mun. Cts. R. Civ. P., Rule 54 (c). Moreover, Rule 15 allows the pleadings to be amended to conform to the evidence presented at trial. The ad damnum clause could now be amended to conform to the award.
Since we find no prejudicial error in the trial judge’s actions, we affirm his decision in awarding plaintiffs $6,172.34 and in dismissing the complaints against Henshaw and Mutter.
Report dismissed.

 Dist./Mun. R. Civ. P., Rule 42 (c) provides that Rule 41 (b) (2) also applies to third-party claims.

In both cases, the trial judge proceeded to issue findings as required by Rule 41 (b) (2) as prescribed in Rule 52 (a).

 “No. 3. Defendant did not misrepresent as to adequacy of water supply.. .No. 5. whether or not there was plenty of water should be determined by whether there was water sufficient for defendant’s needs while he lived at the premises. No. 8. The fact there was plenty of water on premises for needs of seller-defendant, and his family justifies his telling buyers there was plenty of water. No. 10 Defendant-seller was not obliged to inquire as to specific water needs and requirements of plaintiffs ..

 The judge found the plaintiff sustained consequential damages in the amount of $1,172.34 as a result of the inadequate water supply.