Brennan, J.
Claiming that she had been the victim of unfair and deceptive business practices, plaintiff Aliceson Anderson (“Anderson”) commenced this action in four counts to recover for the defendants’ breach of contract, breach of express and *16 implied warranties, negligence and violations of G.Lc. 93A, §2 in allegedly failing to repair her vehicle. A jury returned a verdict for Anderson on the first three counts and awarded $3,560.00 in damages. Anderson has appealed the trial judge’s denial of her G.Lc. 93A claim and his exclusion of evidence of her alleged emotional distress.
Anderson’s 1996 Toyota Camry had an odometer reading of 83,107 miles when she purchased it in 1999. In February, 2002, she brought the car to defendant Brake King Automotive, Inc. (“Brake King”) because it was making a strange noise. Brake King diagnosed and replaced a defective left axle at a cost of $150.00.
On June 4,2002, four months after Brake King’s repairs and after the car had been driven an additional 7,000 miles, the car broke down on the Massachusetts Turnpike. Upon being contacted by Anderson, Brake King towed the car to its garage, inspected it and determined that the car’s motor mounts had shifted, causing the axle to break and to ‘beat a hole” into the transmission. Brake King further determined that the transmission itself had seized, which contributed to the axle breaking. Defendant Moshe Ronin (“Ronin”), Brake King’s president, advised Anderson that the axle could have broken as a result of her extensive driving, or of hitting a pothole. Ronin offered to repair both the axle and transmission for $1,000.00, an amount only slightly above cost. Claiming that Brake King should have repaired both the axle and the transmission without charge under warranties covering the axle replacement four months earlier, Anderson rejected Ronin’s offer.
The car was towed to Best Transmission, where the axle and transmission were repaired at a cost of $2,780.00. A Best Transmission employee, John Lampro, testified at trial that the axle broke because it had been improperly assembled without a snap-ring in place.
1. As Anderson necessarily concedes on this appeal, when a complaint includes both common law counts and a G.Lc. 93A claim, “a judge has the option of ‘(a) letting the jury find the facts for both claims, (b) reserving to himself all aspects of the c. 93A claims, or (c) asking the jury for a nonbinding advisory’ as to the c. 93A matter.” Chamberlayne School v. Banker, 30 Mass. App. Ct. 346, 354 (1991), quoting Acushnet Fed. Credit Union v. Roderick, 26 Mass. App. Ct. 604, 606 (1988). Contrary to Anderson’s contention, the trial judge chose the second option in this case, clearly informing both parties that “the Court [would] decide after hearing from the jury as the finder of fact on the underlying substantive charges whether or not there [were] any issues of 93A ...” The judge so ruled in deciding the defendants’ motion for a directed verdict, specifically noting that as to the “question of [the] 93A claim, that issue is reserved until [the] jury returns a verdict.” He reiterated his approach at the conclusion of the case, after the jury had rendered its findings on the common law claims. Further, the judge advised the parties that he would hold a hearing on the G.Lc. 93A claim in the event he found it appropriate to do so.
Based on the evidence admitted at trial and the G.Lc. 93A memoranda submitted by the parties, the judge ultimately ruled that there was “insufficient evidence at trial to suggest (never mind meet the plaintiff’s burden of proof) that the defendants’ actions were unfair and deceptive.”[2] In deciding Anderson’s G.Lc. 93A claim, the judge was in no way bound or constrained by the jury’s verdict on the contract and warranty counts and could properly reach a decision inconsistent with the jury’s.[3] Kattar v. Demoulas, 433 Mass. 1, 12 (2000); Simas v. House of Cabinets, Inc., 53 Mass. App. Ct. 131, 141 (2001). The judge “was entitled to take a different view of the evidence Ilian that expressed in the jury’s verdict,” Frostar Corp. v. Malloy, 63 Mass. App. Ct. 96, 109 (2005), and to “make *17 independent and, therefore, different, findings on the c. 93A aspect of [the] case that ar [ose] from the same facts which gave rise to parallel common law claims.” Poly v. Moylan, 423 Mass. 141, 151 (1996). See also W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 753 (1993) (trial judge found no basis for c. 93A claim, even though jury found for plaintiff on underlying breach of contract count) .[4]
Based on the record before us, there was no error in the trial judge’s c. 93A ruling. As the judge noted, while the evidence demonstrated the existence of a contract dispute between the parties, that controversy did not alone constitute a G.Lc. 93A violation. Gopen v. American Supply Co., 10 Mass. App. Ct. 342, 348 (1980). “[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made.” Duclersaint v. Federal Nat'l Mortg. Ass’n., 427 Mass. 809, 814 (1998). See Framingham Auto Sales, Inc. v. Workers’ Credit Union, 41 Mass. App. Ct. 416, 418 (1996). The evidence was conflicting as to the actual cause of the car’s breakdown in June, 2002 and thus of the parties’ contractual rights, obligations and liabilities. The record is devoid of any proof of actual deception or misrepresentation by the defendants. Nor, as Anderson argues, was the defendants’ refusal to settle a claim they genuinely contested itself a violation of G.Lc. 93A
2. After a voir dire during which Anderson testified, the judge excluded her proffered evidence of the emotional distress she allegedly suffered in consequence of the defendants’ actions. Anderson testified only that she was upset and cried because she did not have a vehicle for a period of three weeks and did not know how she would get to work or do errands; that she was embarrassed and humiliated in having to ask her father to pay for her car repairs; that she screamed and snapped at people at work during this period; that she couldn’t concentrate, and that she didn’t sleep and fidgeted during the first few days after the car broke down. When asked to describe any physical manifestations of her claimed distress, Anderson explained that when she now took her car in for an oft change, it took much longer because she insisted on staying the entire time and watching the mechanics while they worked on her car.
Relying on Haddad v. Gonzalez, 410 Mass. 855 (1991) and Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396 (2002), Anderson argues that the judge erred in excluding her evidence from the jury because she was entitled to an award for emotional distress as consequential damages for the defendants’ unfair and deceptive acts. First, no G.Lc. 93A consequential damages could have been assessed given the court’s proper determination that there was no G.L.c. 93A violation. Second, Anderson’s reliance on Haddad and Gutierrez is wholly misplaced. The Court allowed recovery in Haddad on a claim for intentional infliction of severe emotional distress. Intentional, as opposed to negligent, infliction of emotion distress requires proof of “extreme and outrageous” conduct by the defendant which is “intended to inflict emotional distress or that [the defendant] knew or should have known ... [would] likely result” in severe emotional distress. Haddad v. Gonzales, supra at 871. There is not a scintilla of evidence in the record of any intentional conduct by the defendants that would satisfy this legal standard. Nor could their conduct in refusing to repair both the axle and transmission on Anderson’s car at no charge be remotely considered extreme or outrageous conduct that would have been intolerable.
Gutierrez dealt with negligent infliction of emotional distress. The trial judge ruled, incorrectly, that damages for infliction of emotional distress could not flow from a claim for property damage. See Sullivan v. Boston Gas Co., 414 Mass. 129, 137-138 (1993) (plaintiffs suffered compensable negligent infliction of emotional dis *18 tress watching their house burn down after gas explosion). However, the judge’s ruling was harmless error as Anderson’s evidence was insufficient to permit recovery for even negligently inflicted distress. Recovery on that theory would have required proof that Anderson suffered “physical harm manifested by objective symptomatology” and that a “reasonable person would have suffered emotional distress under the circumstances of the case.” Rodriguez v. Cambridge Housing Auth., 443 Mass. 697, 701 (2005), quoting Payton v. Abbot Labs, 386 Mass. 540, 557 (1982). As the trial judge noted at the conclusion of Anderson’s voir dire testimony, “[a]ll I have here is the fact that she was emotionally distressed because she was upset and angry over the fact that she had problems with her car....” A successful claim for negligent infliction of emotional distress “must do more than allege mere upset, dismay, humiliation, grief and anger.” Sullivan v. Boston Gas Co., supra at 137. Anderson failed to present additional, sufficient evidence. Nor would the record before us have warranted the conclusion that “a reasonable person” would have suffered actionable emotional distress in the circumstances of this case.
Judgment affirmed. Appeal dismissed.
So ordered.

 A hearing for the assessment of damages was, therefore, unnecessary.

 The “constitutional right to trial by jury is not implicated because there is no right to a jury trial of a c. 93A claim.” Wyler v. Bonnell Motors, Inc., 35 Mass. App. Ct. 563, 567 (1993).

 Thus there is no merit in Anderson’s argument that the trial judge was required as a matter of law to find a G.Lc. 93A violation because the jury found a breach of warranty and such a breach is an unfair and deceptive act pursuant to 940 CMR 3.08 (2). The judge was free to disagree with the jury and find that there was no breach of warranty.